## PRUETT v. STATE.   (No. 8163.)

(Court of Criminal Appeals of Texas.
Oct. 29, 1924.)

1. **Bigamy**  &#x22FB;11—Evidence held not to support finding that defendant's mistake of fact as to former wife's divorce resulted from want of care.

In prosecution for bigamy, evidence *held* not to support finding that defendant's mistake in believing his former wife had secured a divorce arose through his want of proper care.

2. **Criminal law**  &#x22FB;1159(1)—Verdict disturbed on issue of fact only to prevent entire miscarriage of justice.

Court of Criminal Appeals disturbs verdict on issue of fact, only when affirmance would cause entire miscarriage of justice.

Appeal from District Court, Milam County; John Watson, Judge.

Horace Pruett was convicted of bigamy, and appeals. Reversed and remanded.

E. A. Camp, of Rockdale, for appellant.

Tom Garrard, State's Atty., and Grover C. Morris, Asst. State's Atty., both of Austin, for the State.

HAWKINS, J. Appellant was convicted of bigamy growing out of his marriage with Amy Yoakum in November, 1922, and his punishment assessed at two years in the penitentiary.

The record presents a state of facts very unusual and entirely out of the ordinary as generally found in bigamy cases. A close examination causes us to entertain grave doubts whether the finding of the jury upon one material issue is supported by the evidence. The facts hereafter stated are practically uncontroverted. Appellant was only 23 years of age at the time of trial in June, 1923. He had married Blanche Hill in September, 1917, when quite young. For some reason not disclosed by the record appellant and his wife had separated about September, 1921; she and her children going to live with her brother in another county. An attorney was employed by her brother to file suit for divorce against appellant. In September, 1922, said attorney prepared a petition for divorce, and at the same time and before filing the petition he prepared an acceptance of service or waiver of citation, which he mailed to appellant in Milam county, with request that he execute the same in the presence of witnesses and return to said attorney. Appellant complied with the request and returned the waiver to said attorney by mail on September 10, 1922. It appears that the attorney laid the waiver aside, and did not in fact file it in court until January, 1923. He admits that he changed the date of the term of court, as it appeared in the waiver, from September, 1922, to January, 1923, without any knowledge whatever on the part of appellant of such change. The suit for divorce was filed in Williamson county; Mrs. Pruett living in that county at the time. She subsequently moved to Burleson county. The attorney intended to withdraw the suit in Williamson county and refile it in Burleson county; but this was never done, and the case had never been tried or otherwise disposed of. Appellant had no notice whatever, at the time he received and signed the waiver, that the petition for divorce had not already been filed in the court.

Appellant's younger brother, Pinkney Pruett, was paying attention to Amy Yoakum. The relations between them became criminally intimate, and she became enceinte by him. They had expected to marry in June, 1922, but his family objected, and the marriage was not consummated. When Miss Yoakum realized her condition, she importuned Pinkney Pruett to marry her and save further humiliation to herself and family, and to give her child a name. Upon his continued refusal to accede to her request, she told appellant of her condition, and requested him to intercede with his brother and persuade him to marry her. This appellant did, but without avail. Appellant told Miss Yoakum, if his brother would not marry her and

help her out of her trouble, that appellant would marry her himself. He told her at the time he had a divorce, appellant thinking the waiver he had signed had divorced him. It is admitted by counsel for appellant that, if he had married under such impression without further information, he could not have excused himself under a mistake of fact as to a divorce. In September or October he wrote to Lon Hill, his brother-in-law, who lived in Burleson county, expressing a wish to visit his wife and children, and intimating that he would like for his wife to again live with him. Hill had living with him a younger brother, whose feelings were antagonistic to appellant, and Hill wrote appellant in reply, telling him he was too late, that his wife had already secured a divorce from him, and that it would do no good for him to come, and might cause trouble. Although Hill knew that no divorce had in fact been granted to his sister, and his purpose was to keep appellant away, to avoid trouble between him and the brother, appellant had no knowledge or information which caused him to doubt the truth of the statements contained in Hill's letter. About this time appellant went to the justice of the peace who had married him and Miss Hill, and asked for information as to the right of a party to marry within a year after a divorce had been granted. He was informed by the justice of the peace, who was also an attorney, that no criminal penalty attached thereto, although he might be held in contempt of court. About this time Miss Yoakum left Rockdale and went to Lufkin, and remained there until some time in November. When she returned, she and appellant were married.

[1] The learned trial judge charged the jury that, if they believed at the time appellant married Miss Yoakum that his former wife had prior thereto secured a divorce, and that he had exercised proper care to ascertain whether she had been divorced from him, he would be entitled to an acquittal, but that, if such a mistake arose on account of want of proper care on appellant's part, they could not acquit him on a mistake of fact. Under the facts heretofore stated we have not been able to bring ourselves to believe that the finding of the jury upon the issue of a mistake of fact is supported by the evidence; on the contrary, it appears to be against the evidence. When appellant signed the waiver sent him by the attorney, the reasonable conclusion would have been that a divorce proceeding had been filed. The subsequent negligence of the attorney in not filing the waiver and proceeding with the suit is in no way chargeable to appellant, and the evidence is positive to the effect that he had no knowledge thereof. Although at the time he talked to Miss Yoakum, and promised to marry her in the event his brother did not do so, he believed he was divorced from the fact of having signed the acceptance of service, it appears as an uncontroverted fact that thereafter he wrote to his brother-in-law, expressing a desire to be reunited with his wife and children, and was positively informed in reply to that letter that his request came too late because a divorce had already been granted to his wife. It is true that by an inquiry from the clerk of the proper court he could have ascertained that no divorce decree had been entered, but his failure to do, this, in view of the positive information he had relative to the matter, does not appear to have been such lack of diligence as would make appellant guilty of a criminal act in entering into a second marriage.

This is the vital point upon which a decision must turn. After appellant knew of the condition of Miss Yoakum, brought about by his brother, he himself indulged in improper relations with her. This conduct is to be severely condemned, and doubtless this fact influenced the jury in arriving at a verdict of guilty, as well as the further fact that the issue was sharply drawn as to whether appellant intended, at the time he married Miss Yoakum, to live with her. They only lived together a week. Her testimony would indicate that after this time he abandoned her. His testimony controverting this point is to the effect that he was seeking work. It is not intimated that any affection existed between appellant and Miss Yoakum; on the contrary, it clearly appears that they had never been sweethearts. He had never paid her any attention, and the marriage on his part and hers was not because of affection or love on the part of either.

[2] Whether his relation with her upon one occasion prior to the marriage was improper, and subject to condemnation, or whether he intended to live with her at the time he married her, does not in our opinion touch upon the vital issue in this case, but the point is: Did he, at the time he entered into the marriage with Miss Yoakum, believe his wife had secured a divorce from him, and, being mistaken as to that fact, did such mistake arise from want of proper care on his part? It is with hesitation this court disturbs the verdict upon an issue of fact, and does so only when in our opinion it would result in an entire miscarriage of justice to do otherwise. After carefully reviewing the facts more than once, we have reached the conclusion that we cannot in good conscience permit this verdict to stand.

The judgment is ordered reversed, and the cause remanded.